IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DARNELL W. MOON,** <br> **Former No. 34077-044,**[1] <br><br> Plaintiff, <br><br> vs. <br><br> **HENRY RIVAS, M. NEUMANN,** <br> **STEVEN CARDONA, J. S. WALTON,** <br> **FEDERAL BUREAU OF PRISONS,** <br> **LESLIE SMITH, D. SCOTT DODRILL,** <br> **BRIAN K. DAVIS, AMBER NELSON,** <br> **PAUL M. LAIRD, D. SCHIAVONE,** <br> **APRIL CRUITT, WILLIAM FALLS,** <br> **JOHN BAIR, J. SIMMONS, T. CAPALDO,** <br> **STEPHEN COLT, G. BURGESS,** <br> **E. GARCIA, CALVIN JOHNSON,** <br> **and DAN SPROUL,** <br><br> Defendants. | Case No. 15-cv-00890-NJR |

## MEMORANDUM & ORDER

**ROSENSTENGEL, District Judge:**

Plaintiff Darnell Moon is a former inmate in the Federal Bureau of Prisons ("BOP"). Until recently, he was housed in the Communications Management Unit ("CMU") at the United States Penitentiary in Marion, Illinois ("USP-Marion"). He currently resides in Cape Girardeau, Missouri.

Proceeding *pro se*, Moon filed this action pursuant to 42 U.S.C. § 1331, the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, the Privacy Act, 5 U.S.C. § 552a, the Federal Wiretapping Act ("FWA"), 18 U.S.C. §§ 2510, *et seq*., and *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). Moon's primary complaint is that federal officials illegally

---

[1] Because all claims in the complaint arise from events that occurred during Moon's incarceration at the United States Penitentiary in Marion, Illinois, his prison identification number is included for reference.

maintained and disseminated a file containing private and religious information about him to other federal agencies. These officials did not secure his written authorization or consent before doing so. Moon's multiple requests for the information since 2012 have been ignored or denied. He now sues numerous federal officials for violating his rights under the FOIA, Privacy Act, FWA, and First Amendment. He seeks declaratory judgment, monetary damages, and injunctive relief.

Moon has requested leave to proceed *in forma pauperis* ("IFP") (Doc. 2) pursuant to 28 U.S.C. § 1915. Section 1915 is meant to ensure that indigent litigants have meaningful access to the federal courts, and it applies to non-prisoner plaintiffs and prisoners alike. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989); *Floyd v. United States Postal Serv.,* 105 F.3d 274, 275–77 (6th Cir. 1997) (overruled on other grounds) ("[T]he only logical interpretation of the statute is that non-prisoners have the option to proceed *in forma pauperis* under § 1915(a)."). Under § 1915, an indigent party may commence a federal court action, without paying required costs and fees, upon submission of an affidavit asserting inability "to pay such fees or give security therefor" and stating "the nature of the action, defense or appeal and the affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). Moon has done so in the instant case, but the Court's inquiry does not end there.

Section 1915(e)(2) requires careful threshold scrutiny of the complaint filed by an IFP plaintiff. A court can deny a qualified plaintiff leave to file IFP or dismiss a case if the action is clearly frivolous or malicious, fails to state a claim, or is a claim for money damages against an immune defendant. 28 U.S.C. § 1915(e)(2)(B). The test for determining if an action is frivolous or without merit is whether the plaintiff can make a rational argument on the law or facts in support of the claim. *Neitzke*, 490 U.S. at 325; *Corgain v. Miller*, 708 F.2d 1241, 1247 (7th Cir.

1983). An action fails to state a claim if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When assessing an IFP motion, a district court should inquire into the merits of the claims, and if the court finds them to be frivolous, it should deny leave to proceed IFP. *Lucien v. Roegner*, 682 F.2d 625, 626 (7th Cir. 1982). The complaint survives preliminary review under this standard. Accordingly, Moon shall be granted leave to proceed IFP, and his complaint shall receive further review.

## The Complaint

According to the complaint, Darnell Moon transferred into the Communications Management Unit ("CMU") at USP-Marion on or around January 10, 2012 (Doc. 1, p. 9). The CMU consists almost entirely of Muslims. Within six months of his transfer, Moon converted to Islam (Doc. 1, p. 10). In the CMU, the communications of these inmates are closely monitored.

The CMU is allegedly managed by a Counterterrorism Unit ("CTU") located in Martinsburg, West Virginia (Doc. 1, pp. 9-10). CTU staff members work on site at USP-Marion to classify and process inmates who are entering or exiting the CMU. These individuals use video and audio recording devices to monitor all incoming and outgoing communications of CMU inmates, including mail, emails, phone calls, and all direct contacts with outsiders (Doc. 1, p. 10). The CTU staff at USP-Marion includes Defendants Smith, Schiavone, Capaldo, Colt, Cruitt, Bair, Simmons, and Falls.

Moon alleges that all of the defendants intercepted his phone calls in violation of the FWA (Doc. 1, p. 11). After intercepting his calls, the defendants disseminated information obtained from them to other federal agencies. When Moon confronted Defendants Rivas,

Cardona, Neumann, and Walton about the practice, they told Moon to "mind [his] own business" (*Id.*).

The BOP, CTU, and CMU allegedly collected and maintained private information about Moon in a "CTU file," which is not part of his BOP file. This file allegedly contains his social security number, tax records, family records, and records of his communications and activities, among other things. Some of these communications and activities are religious in nature, such as recorded conversations with other Muslims and recordings of the weekly Islamic religious sermon in the CMU. Moon alleges that information from this file was also disseminated to other federal law enforcement agencies, including the Federal Bureau of Prisons, the Central Intelligence Agency, Homeland Security, and the Drug Enforcement Agency. Moon was allegedly placed on the "no fly" list as a result. He believes that his religious activities are still being monitored.

According to the complaint, the practice of collecting, storing, and disseminating private information about Moon violates his rights under the Privacy Act, the First Amendment, and the FWA. The failure of the BOP and CTU to turn over this information upon request to Moon allegedly violates his rights under FOIA. Moon now seeks declaratory judgment, monetary damages, and injunctive relief (Doc. 1, pp. 7, 14).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to reorganize the claims in Moon's *pro se* complaint into four (4) counts, as set forth below.

> **Count 1:** Defendants violated the Freedom of Information Act, 5 U.S.C. § 552, when they failed to provide Moon with a copy of his CTU file in response to multiple requests (Doc. 1, pp. 12-13);
>
> **Count 2:** Defendants violated Moon's rights under the Privacy Act, 5 U.S.C. § 552a, by maintaining an unlawful system of records on Moon and disclosing private information about him to other federal agencies (Doc. 1, pp. 11-12);
>
> **Count 3:** Defendants violated Moon's rights under the First Amendment by maintaining an unlawful system of records about Moon (that includes his social security number, tax records, family records, and records of his religious communications) and disclosing private information to other federal agencies (Doc. 1, p. 12);
>
> **Count 4:** Defendants violated the Federal Wiretapping Act, 18 U.S.C. §§ 2510 *et seq*., when they unlawfully intercepted his phone calls and emails (Doc. 1, pp. 10-11, 13).

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designation of these counts should not be construed as an opinion regarding their merit.

**Counts 1 & 2 – FOIA and Privacy Act**

FOIA and the Privacy Act apply to federal, not state, agencies. *See* 5 U.S.C. § 551(1). FOIA is a federal law authorizing access to information, and it provides for injunctive relief. 5 U.S.C. § 552. The Privacy Act is a federal law that protects information, with limited access provisions, and it provides for money damages. 5 U.S.C. § 552a. Moon seeks relief under both.

Moon's request for injunctive relief under FOIA (**Count 1**) shall receive further review. FOIA authorizes any person to request access to federal agency records, unless those records are protected from disclosure by statute or by one of three special law enforcement records exclusions. *See Enviro Tech Int'l v. EPA*, 371 F.3d 370, 374 (7th Cir. 2004) (citing 5 U.S.C. § 552(a), (b)). Disclosure is mandatory, unless the requested record is clearly exempted from disclosure. *Id.* (citing 5 U.S.C. § 552(a)). Exemptions are construed narrowly. *Id.* FOIA vests

federal courts with jurisdiction "to enjoin [an] agency from withholding agency records and to order the production of any agency records improperly withheld" from a complainant. *See* 5 U.S.C. § 552(a)(4)(B); *GTE Sylvania, Inc. v. Consumers Union of U.S., Inc.*, 445 U.S. 375 (1980).

One or more of the exemptions or special law enforcement records exclusions may apply to Moon's FOIA requests. *See, e.g.*, 5 U.S.C. § 552(b)(1), (2), (5), (7). At this early stage, the Court cannot tell. And because the exemptions must be construed narrowly, the Court cannot dismiss the FOIA claim on this basis. Moon shall be allowed to proceed with this claim.

In contrast to FOIA, the Privacy Act requires federal agencies to take certain precautions to keep personal information confidential (**Count 2**). *Big Ridge, Inc. v. Federal Mine Safety and Health Review Com'n*, 715 F.3d 631, 650 (7th Cir. 2013) (citing 5 U.S.C. § 552a(b)) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains. . . ."); *see also* 5 U.S.C. § 552a(c) (outlining accounting precautions agencies must take with regard to personal information). *United States Dep't of Navy v. Federal Labor Relations Auth.*, 975 F.2d 348, 350 (7th Cir. 1992) (reiterating Privacy Act's requirement that federal officials not disclose personal information without consent). Generally, the individual who is covered by a record, or legally authorized representative, must request information under the Privacy Act. Under certain circumstances, individuals may seek civil remedies that include money damages for "intentional or willful" violations of the Privacy Act. *See* 5 U.S.C. § 552a(g)(4).

Under both FOIA and the Privacy Act, a plaintiff is required to name the applicable government agency, rather than individual agency employees. *See* 5 U.S.C. § 552(a)(4)(B);

*Brown-Bey v. United States*, 720 F.2d 467, 469 (7th Cir. 1983); *Batton v. Evers*, 598 F.3d 169, 173 n. 1 (5th Cir. 2010) ("A FOIA plaintiff may not assert a claim against an individual federal official; the proper defendant is the agency."); *Petrus v. Bowen*, 833 F.2d 581, 582 (5th Cir. 1987) ("Neither the Freedom of Information Act nor the Privacy Act creates a cause of action for a suit against an individual employee of a federal agency."). In addition to naming the BOP as a defendant in this action, Moon has also named numerous individual employees. His FOIA and Privacy Act claims can only proceed against the agency.

The FOIA claim in **Count 1** and Privacy Act claim in **Count 2** survive preliminary review and shall proceed against the Federal Bureau of Prisons. Counts 1 and 2 shall not proceed, however, against the individual defendants who are named in connection with this claim, including Defendants Rivas, Neumann, Cardona, Walton, Smith, Dodrill, Davis, Nelson, Laird, Schiavone, Cruitt, Falls, Bair, Simmons, Capaldo, Colt, Burgess, Garcia, Johnson, and Sproul. Counts 1 and 2 shall be dismissed without prejudice against each of these defendants, based on Moon's failure to state a claim against them upon which relief may be granted.

**Claim 3 – First Amendment**

Moon's claim that the system of records maintained by the BOP, CMU, and CTU violates his rights under the First Amendment (**Count 3**) shall be dismissed. Even construing the allegations in his favor, as this Court is required to do, the Court finds no basis for a First Amendment claim. It is unclear whether Moon's objection under the First Amendment is that the CTU file should not be maintained at all, the CTU file should be part of his BOP file, the CTU file interferes with his ability to exercise his religion, the CTU file precludes him from exercising his freedom of speech, the CTU file deterred him from filing grievances or lawsuits in prison, or

something else. Plaintiff alluded to each of these concerns in the complaint, but he failed to indicate how any of this conduct violated his rights under the First Amendment.

The complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Moon's claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), the factual allegations that Moon offers in support of his First Amendment claim are so sketchy, implausible, or conclusory that they fail to provide sufficient notice of a his claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Because the allegations in the complaint state no coherent or plausible First Amendment claim, **Count 3** shall be dismissed without prejudice.

**Claim 4 – Federal Wiretapping**

Moon's claim (**Count 4**) that the interception of his phone calls in prison violates the FWA shall also be dismissed. The FWA confers a civil cause of action on "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter." *Seitz v. City of Elgin*, 719 F.3d 654 (7th Cir. 2013) (quoting 18 U.S.C. § 2520(a)). The aggrieved party may sue "the person or entity, other than the United States, which engaged in that violation." *Id.*

Specifically excluded from coverage under the statute is any "electronic, mechanical, or other device" used to "intercept a wire, oral, or electronic communication," if used "by an investigative or law enforcement officer in the ordinary course of his duties." 18 U.S.C. § 2510(5)(a)(ii). All of the defendants named in this action qualify as "investigative or law enforcement officers." *Id*. This term includes "any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make

arrests for offenses enumerated in this chapter. . . ." 18 U.S.C. § 2510(7). The Seventh Circuit has long held that the exception in § 2510(5)(a)(ii) applies when a prison official records telephone conversations of inmates on facility phone lines while they are incarcerated. *See United States v. Fekes*, 879 F.2d 1562, 1565-66 n. 6 (7th Cir. 1989) (recording of phone calls from inmate on prison phone lines does not impinge unreasonably on inmate's expectations of privacy or violate the FWA).

Moreover, Moon was not housed in the general prison population. He was housed in the CMU. The purpose of the CMU is to manage communications of inmates housed in the unit. The routine monitoring of phone calls and emails would, as the name of the unit suggests, be managed or monitored on an ongoing basis. Moon was well aware of this fact. He learned that his communications would be closely monitored "upon arrival to the CMU" (Doc. 1, p. 9). He merely disagreed with the practice. *See United States v. Sababu*, 891 F.2d 1308, 1329 (7th Cir. 1989) (ordinary course exception to the Federal Wiretapping Statute, 18 U.S.C. §§ 2510 *et seq*., satisfied where recordings are made in accordance with established prison routine). **Count 4** falls squarely within the exclusion under § 2510(5)(a)(ii) and shall be dismissed without prejudice.

## Pending Motions

Moon's motion for leave to proceed *in forma pauperis* (Doc. 2) is **GRANTED**.

Moon also filed a motion for service of process at government expense (Doc. 5), which is hereby **GRANTED**. Service shall be ordered below on those defendants against whom Moon articulated viable claims in the complaint.

**Disposition**

**IT IS HEREBY ORDERED** that **COUNTS 3** and **4** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.

**IT IS FURTHER ORDERED** that **COUNTS 1** and **2** shall proceed only against Defendant **FEDERAL BUREAU OF PRISONS**; these claims are **DISMISSED** without prejudice against all other defendants, for failure to state a claim upon which relief may be granted.

**IT IS ORDERED** that Defendants **RIVAS, NEUMANN, CARDONA, WALTON, SMITH, DODRILL, DAVIS, NELSON, LAIRD, SCHIAVONE, CRUITT, FALLS, BAIR, SIMMONS, CAPALDO, COLT, BURGESS, GARCIA, JOHNSON,** and **SPROUL** are **DISMISSED** without prejudice from this action.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendant **FEDERAL BUREAU OF PRISONS**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendant **FEDERAL BUREAU OF PRISONS** pursuant to Federal Rule of Civil Procedure 4(i)(2) of the Federal Rules of Civil Procedure.[2] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the

---

[2] "To serve a United States agency or corporation, or a United States officer or employee sued only in an official capacity, a party must serve the United States and also send of a copy of the summons and of the complaint by registered or certified mail to the agency, corporation, officer, or employee." *See* FED. R. CIV. P. 4(i)(2).

summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

If is **FURTHER ORDERED** that Plaintiff shall serve upon Defendant, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Donald G. Wilkerson** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge **Wilkerson** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a

stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  September 21, 2015**

*[signature: Nancy J. Rosenstengel]*

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**